AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One (1) black Apple iPhone | Case No. 21-  9312 MB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before __1/11/2022__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   __12/28/2021@9:46am__        _EsWillett_
                                                    *Judge's signature*

City and state: <u>Phoenix, Arizona</u>                  <u>Honorable Eileen S. Willett, United States Magistrate Judge</u>
                                                    *Printed name and title*

## ATTACHMENT A

The property to be searched is:

One (1) black Apple iPhone (the "SUBJECT DEVICE"). The SUBJECT DEVICE is currently in DEA custody and is located within the District of Arizona. The requested warrant seeks authorization to conduct a forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT DEVICE, including:

    a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs, drug packaging, and weapons;

    b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

    c. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    d. any information recording schedule or travel;

    e. evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

    f. evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

    g. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    h. evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

i. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

j. evidence of the times the cellular telephone was used;

k. passwords, encryption keys, and other access devices that may be necessary to access the cellular telephone;

l. documentation and manuals that may be necessary to access the cellular telephone or to conduct a forensic examination of the cellular telephone;

m. records of or information about Internet Protocol addresses used by the cellular telephone;

n. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
One (1) black Apple iPhone

Case No. 21- 9312 MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

**See attached Affidavit of Special Agent Jacquelyn Czopek**

☒ Continued on the attached sheet.
☐ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA William Bryan
WILLIAM BRYAN
Digitally signed by WILLIAM BRYAN
Date: 2021.12.28 07:31:38 -07'00'

*Applicant's Signature*

Jacquelyn Czopek, Special Agent, DEA
*Printed name and title*

Telephonically
Sworn to before me and ~~signed in my presence.~~

Date: 12/28/2021 @ 9:46am

City and state: Phoenix, Arizona

*Judge's signature*

Honorable Eileen S. Willett, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is:

One (1) black Apple iPhone (the "SUBJECT DEVICE"). The SUBJECT DEVICE is currently in DEA custody and is located within the District of Arizona. The requested warrant seeks authorization to conduct a forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT DEVICE, including:

    a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs, drug packaging, and weapons;

    b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

    c. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    d. any information recording schedule or travel;

    e. evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

    f. evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

    g. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    h. evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

     i. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

     j. evidence of the times the cellular telephone was used;

     k. passwords, encryption keys, and other access devices that may be necessary to access the cellular telephone;

     l. documentation and manuals that may be necessary to access the cellular telephone or to conduct a forensic examination of the cellular telephone;

     m. records of or information about Internet Protocol addresses used by the cellular telephone;

     n. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Jacquelyn Czopek, being first duly sworn, hereby depose and state as follows:

### I. **INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine (i) a black Apple iPhone cellular telephone, as further described in Attachment A (referred to hereafter as the "SUBJECT DEVICE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. I am a Special Agent with the United States Drug Enforcement Administration (DEA). I have been so employed since October 2010. I am a law enforcement officer of the United States and is empowered by law to conduct investigations, make arrests, and execute search warrants. I am currently assigned to the DEA Phoenix, Arizona Field Division, Strike Force. Strike Force conducts narcotics investigations into International Drug Trafficking Organizations (DTOs) and specializes in the detection, penetration, and dismantlement of these organizations, often coordinated with the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), United States Postal Inspectors, and state/local law enforcement personnel designated as Task Force Officers (TFOs). I am also a cross-certified Federal Peace Officer with the Maricopa County Sheriff's Office, in accordance with A.R.S. § 13-3875, and may exercise all law enforcement powers of an Arizona Peace Officer.

4.      I have a Bachelor's of Science (B.S.) degree in Psychology from Augustana College in Rock Island, Illinois, and a Master's Degree in Criminal Justice from Lewis University in Romeoville, Illinois. I have completed the Drug Enforcement Administration's Basic Agent Training.  The curriculum for the nineteen-week course includes federal law regarding drug-related offenses and criminal investigations, drug identification, physical surveillance, undercover negotiations, and electronic surveillance.

5.      By virtue of my employment as a Special Agent, I have performed various tasks, which include; investigations into the distribution of marijuana, methamphetamine, heroin, cocaine, fentanyl, Oxycodone, Hydrocodone, Alprazolam (Xanax), as well as the manufacture of methamphetamine and anabolic steroids.  I have participated in both physical and electronic surveillance, which has led to or assisted in the seizure of United States Currency (USC), distributable amounts of marijuana, heroin, cocaine, methamphetamine, Oxycodone, Hydrocodone, Tramadol, fentanyl, Promethazine with Codeine, anabolic steroids, chemical precursors, as well as drug ledgers, drug-related paraphernalia and other documents and records used to facilitate the activities of drug trafficking organizations.  I have participated in many aspects of drug investigations, including the execution of multiple search warrants, Grand Jury subpoenas, and ex parte orders for evidence of drug-related offenses, including narcotics, drug-related ledgers, paraphernalia, records, and evidence of money laundering crimes through the placement and layering of large amounts of U.S. currency.

6.      In the course of conducting drug investigations, I have personally interviewed confidential informants (CIs), cooperating defendants (CDs), sources of information (SOIs) and/or persons involved in the distribution of illegal and diverted drugs and the movement of proceeds from illegal drugs. She has attended minimization briefings and participated in prior investigations which involved wire intercepts targeting drug trafficking organizations.

7. The statements contained in this Affidavit are based on information derived from my personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

8. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all of the relevant facts known to law enforcement officers.

## II. BASIS FOR PROBABLE CAUSE

9. On or about December 15, 2021, an Arizona Department of Public Safety (AZDPS) officer stopped a gray 2005 Ford Expedition bearing Arizona license plate "TMA5RD" (the "Expedition") for multiple traffic violations, including impeding traffic, improper lane changes, and driving with a cracked windshield, while the Expedition traveled along Interstate 10 (I-10) westbound near Eloy, Arizona.

10. After detaining the Expedition, the AZDPS officer made contact with the driver and sole occupant of the Expedition. The driver provided an Arizona driver's license in the name of Kimberly Rosas (ROSAS). The AZDPS officer advised ROSAS that the AZDPS officer had stopped ROSAS due to multiple traffic violations.

11. Upon speaking with ROSAS, ROSAS informed the AZDPS officer that she (ROSAS) did not speak English. A Spanish speaking AZDPS officer arrived to serve as translator.

12. ROSAS said that she (ROSAS) traveled to Mexico for a wedding on the previous day (December 14, 2021), and was returning to work in Phoenix, Arizona this evening (December 15, 2021). AZDPS officers noted that ROSAS appeared to be

nervous and did not have any luggage or clothes in her possession indicative of her (ROSAS') attendance at a wedding. Officers asked ROSAS for consent to search the Expedition, which she (ROSAS) denied. Law enforcement officers thereafter utilized a narcotics-detecting canine to conduct an exterior sniff search of the Expedition. The narcotics-detecting canine alerted to presence of illegal narcotics near the passenger side rear well area of the Expedition.

13. Officers began searching the interior of the Expedition and noted that the center console presented scratches that appeared to be made by work tools and emitted an odor of recently applied adhesives. Soon thereafter, law enforcement officers transported the Expedition and ROSAS to an offsite location to further safely search the Expedition.

14. AZDPS officers searched the center console area of the Expedition and ultimately located approximately 33.5 pounds of round blue tablets wrapped in small, clear plastic bags. Each of the tablets possessed the letter "M" on one side of the tablet and the number "30" on the other side of the tablet. Based upon the training and experience of law enforcement officers participating in the search of the Expedition, the markings on the tablets were consistent with the markings observed on previously seized pills containing fentanyl.

15. During the initial stop of the Expedition, ROSAS exited the vehicle and was observed to be in possession of a black Apple iPhone (the "SUBJECT DEVICE"). The SUBJECT DEVICE was seized from ROSAS by AZDPS and custody of the SUBJECT DEVICE was then transferred to the DEA.

16. Special Agents from DEA Phoenix arrived at the search location and placed ROSAS under arrest. DEA agents advised ROSAS of her Miranda rights, which ROSAS acknowledged. ROSAS informed agents that she (ROSAS) attended a wedding and was provided the Expedition to drive back to Phoenix, Arizona.

17. ROSAS also told DEA agents that the SUBJECT DEVICE seized from ROSAS' person belonged to her (ROSAS). Indeed, ROSAS gave agents consent to access the SUBJECT DEVICE and even provided the passcode to access the SUBJECT DEVICE.

18. International border crossing records indicate that on December 15, 2021, at approximately 1:21 pm., ROSAS entered the United States via the Nogales Port of Entry (POE) as the driver and sole occupant of the Expedition.

19. Prior to ROSAS' entry into the United States from Mexico on December 15, 2021, ROSAS previously entered the United States on November 19, 2021 as the driver and sole occupant of the Expedition.

20. Based upon my training and experience, and discussions with other trained law enforcement personnel, I believe that ROSAS has engaged in drug trafficking activity as a courier. I also know that transporting a large quantity of suspected fentanyl tablets, an illegal controlled substance of high monetary value, is indicative of the courier being a trusted member of a drug trafficking organization.

21. Based upon my training and experience, and discussions with other trained law enforcement personnel, I also know that drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of phone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities. As a result, I believe that there is likely to be evidence related to drug trafficking activity found on the SUBJECT DEVICE.

22. The SUBJECT DEVICE is currently in DEA custody in the District of Arizona. Based upon my training and experience, I know that the SUBJECT DEVICE has been, and is being stored in a manner in which the contents are, to the extent material

to this investigation, in substantially the same state as they were when the SUBJECT DEVICE first came into the possession of the DEA.

### III. **ITEMS TO BE SEIZED**

23. Based upon the facts contained in this Affidavit, I submit that there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT DEVICE.

24. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, I also request permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT DEVICE.

### IV. **DIGITAL EVIDENCE STORED WITHIN THE SUBJECT DEVICE**

25. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT DEVICE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

26. *Probable cause.* I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT DEVICE for at least the following reasons:

   a. I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was

6

sent or received; notes as to how the criminal conduct was achieved; records of internet discussions about the crime; and other records that indicate the nature of the offense.

b.  Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data: including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the internet; and global positioning system ("GPS") information.

c.  Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the device until it is overwritten by new data.

d.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the device that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

27.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of

the crimes described on the warrant, but also for forensic electronic evidence that establishes how the SUBJECT DEVICE was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT DEVICE because:

a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the device was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that logs session times and durations, activity associated with user accounts, electronic storage media that connected with the device, and the IP addresses through which the device accessed networks and the internet. Such information allows investigators to understand the chronological context of the device's access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular

8

telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the device. Finally, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

        c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

        d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a

particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit imaging or otherwise copying the contents of the SUBJECT DEVICE, including the use of computer-assisted scans.

## V. **CONCLUSION**

29. Based upon the foregoing, I submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), are likely to be found in the contents of the SUBJECT DEVICE further described in Attachment A.

_____
Jacquelyn Czopek
Special Agent, Drug Enforcement Administration

Subscribed and sworn to telephonically this ___28___ day of December, 2021.

_____
HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE